UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE COMVERSE TECHNOLOGY, INC. DERIVATIVE LITIGATION | 06-CV-1849 (NGG)(RER) |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| IN RE COMVERSE TECHNOLOGY, INC. DERIVATIVE LITIGATION | No. 601272/06 <br><br> Hon. Richard B. Lowe III, J.S.C. |

## STIPULATION OF COMPROMISE AND SETTLEMENT

This Stipulation of Compromise and Settlement is made and entered into as of the 17th day of December, 2009 (the "Stipulation"), subject to the approval of the respective courts, by and between the following parties to the above-entitled actions (the "Derivative Actions"): (1) plaintiffs Leonard Sollins, Timothy Hill, and Louisiana Municipal Police Employees' Retirement System (collectively, "Plaintiffs"), each of whom has brought suit derivatively for and on behalf of nominal defendant Comverse Technology, Inc. ("Comverse" or the "Company"); (2) nominal defendant Comverse; and (3) the Defendants (as defined in Section 1.6); all by and through their counsel of record (collectively, the "Parties," as defined in Section 1.19). This Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in Section 1.26), upon and subject to the terms and conditions hereof.

## I.   DEFINITIONS

As used in this Stipulation, the following terms shall have the meanings specified below:

1.1     "Alexander Apartments" means the seven apartments titled in Jacob "Kobi" Alexander's name, which are the subject of a pre-judgment attachment order (the "Order of Attachment") entered in *Comverse Technology, Inc. v. Jacob "Kobi" Alexander*, No. 600142/08, pending in the Supreme Court of the State of New York.

1.2     "Board" means the Board of Directors of Comverse.

1.3     "Civil Forfeiture Action" means *United States of America v. All Funds on Deposit at: Citigroup Smith Barney Account No. 600-00338 held in the name of Kobi Alexander and Citigroup Smith Barney Account No. 600-27694 held in the name of Kobi J. Alexander*, No. 06-CV-03730 (NGG)(RER), pending in the United States District Court for the Eastern District of New York.

1.4     "Compensation Committee" means the committee, formerly known as the Remuneration and Stock Option Committee, comprised of members of the Comverse Board that has overall responsibility for the compensation of the Company's directors and executive officers, and for approving the director and officer compensation plans, policies, and programs of the Company.

1.5     "Complaints" means the Consolidated and Amended Shareholder Derivative Complaint filed in the State Derivative Action and the Consolidated, Amended and Verified Shareholder Derivative Complaint filed in the Federal Derivative Action, collectively.

1.6     "Defendants" means Comverse, D&T, and the Individual Defendants.

1.7     "Deloitte" means Deloitte & Touche LLP ("D&T"), Deloitte LLP (formerly known as Deloitte & Touche USA LLP), Deloitte Consulting LLP, Deloitte Tax LLP, Deloitte Financial Advisory Services LLP, Deloitte Touche Tohmatsu ("DTT") and any and all DTT associate and member firms, all their respective, past, present and future parent companies,

361199.16

subsidiaries, affiliates, divisions, related entities, joint venturers, subcontractors, agents, attorneys, insurers, subrogees, co-insurers and reinsurers, all their respective, past, present and future officers, directors, employees, members, partners, principals, shareholders and owners, and all their respective heirs, executors, administrators, personal representatives, predecessors, successors, transferees, and assigns; except that David Kreinberg is not included in the definition of Deloitte and is specifically excluded from the definition of Deloitte.  D&T is a defendant in only the State Derivative Action.

1.8     "Derivative Actions" means the State Derivative Action and the Federal Derivative Action, collectively.

1.9     "Direct Actions" means the actions brought by Comverse against Jacob "Kobi" Alexander and William Sorin in the Supreme Court of the State of New York, *Comverse Technology, Inc. v. Alexander*, No. 08/600142, and against David Kreinberg in the Supreme Court of the State of New York, *Comverse Technology, Inc. v. Kreinberg*, No. 09/600052.

1.10     "Effective Date" means the date of completion of the following: (a) entry of an Order and Final Judgment approving in all material respects this Stipulation; (b) entry of an Order dismissing with prejudice the State Derivative Action; and (c) either (1) expiration of the time to appeal or otherwise seek review of the Order and Final Judgment and the order dismissing the State Derivative Action, without any appeal having been taken or review sought, or (2) if an appeal is taken or review sought, the expiration of five (5) days after an appeal or review shall have been dismissed or finally determined by the highest court before which such appeal or review is sought and which affirms the material terms of such settlement and/or Order and Final Judgment and/or order dismissing the State Derivative Action and is not subject to further judicial review.

361199.16

1.11    "Federal Court" means the United States District Court for the Eastern District of New York.

1.12    "Federal Derivative Action" means *In re Comverse Technology, Inc.*, No. 06-CV-1849 (NGG)(RER), pending in the United States District Court for the Eastern District of New York, before the Honorable Nicholas Garaufis.

1.13    "Federal Dismissal" means the entry of an order dismissing with prejudice the Federal Derivative Action.

1.14    "Federal Lead Plaintiff" means Louisiana Municipal Police Employees' Retirement System.

1.15    "Individual Defendants" means Jacob "Kobi" Alexander ("Mr. Alexander" or "Alexander"), Raz Alon, Dan Bodner, Zeev Bregman, Itsik Danziger, John H. Friedman, Francis Girard, Ron Hiram, David Kreinberg, Igal Nissim, Sam Oolie, Shawn K. Osborne, William F. Sorin, Shaula A. Yemini, and Yechiam Yemini.  Individual Defendant Raz Alon is a defendant in only the Federal Derivative Action.[1]

1.16    "Nominal Defendant" means Comverse.

1.17    "Notice" means the Notice of Pendency and Settlement of Derivative Actions and of Settlement Hearing, substantially in the form submitted contemporaneously herewith as Exhibit 1 to Exhibit A.

1.18    "Order and Final Judgment" means an order and final judgment substantially in the form of Exhibit B hereto.

1.19    "Parties" means collectively, Plaintiffs, Defendants, and Nominal Defendant.

---

[1] Zvi Alexander and Carmel Vernia were named as defendants in the Derivative Actions, but service was never perfected.  As former officers and/or directors of Comverse, they are included as part of the definition of Released Persons and will be released as part of the proposed Settlement.

4

1.20    "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business, or legal entity.

1.21    "Plaintiffs" means Leonard Sollins, Timothy Hill, and Louisiana Municipal Police Employees' Retirement System.

1.22    "Plaintiffs' Counsel" means Milberg LLP; Barroway Topaz Kessler Meltzer & Check, LLP; and Bernstein Litowitz Berger & Grossmann LLP.

1.23    "Preliminary Order" means an order substantially in the form of Exhibit A hereto, preliminarily approving the Settlement and directing notice thereof to shareholders.

1.24    "Publication Notice" means the Summary Notice of Pendency and Settlement of Derivative Actions and of Settlement Hearing, substantially in the form submitted contemporaneously herewith as Exhibit 2 to Exhibit A.

1.25    "Related Persons" means, with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, principals, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with

361199.16

such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family.  With respect to D&T, the definition of Related Persons includes Deloitte; provided, however, that David Kreinberg shall not be considered or included as a Related Person of D&T or Deloitte as defined herein.

1.26   "Released Claims" means any statutory or common law claims, rights, demands, suits, matters, issues, or causes of action under federal, state, local, foreign law, or any other law, rule, or regulation, including any claim for breach of fiduciary duty, insider trading, misappropriation of information, failure to disclose, abuse of control, breach of Comverse's policies or procedures, waste, mismanagement, gross mismanagement, unjust enrichment, misrepresentation, fraud, breach of contract, negligence, breach of duty of care or other duty, violations of law, money damages, injunctive relief, corrective disclosure, damages, penalties, disgorgement, restitution, contribution, indemnity, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses, or liability whatsoever, whether based on federal, state, local, foreign, statutory, common law, or any other law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, whether known or Unknown, that were asserted, or could have been asserted in the Derivative Actions by Comverse, Plaintiffs, or any Comverse Shareholder, derivatively on behalf of Comverse, in any court of competent jurisdiction or any other adjudicatory tribunal, against the Released Persons in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, to the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, compensation practices or procedures, omissions or failures to act which were or which could have been alleged or

361199.16

described in the Derivative Actions by Comverse, Plaintiffs, or any Comverse Shareholder, derivatively on behalf of Comverse. The "Released Claims" include but are not limited to any and all claims related to or arising out of the matters reported in Comverse's Form 8-Ks dated November 5, 2007, January 29, 2008, March 16, 2009, and April 27, 2009; Comverse's compensation practices; Comverse's backdating of options; Comverse's administration of a secret options reserve fund; Comverse's recycling of unexercised options from departed employees to other employees, or any other Comverse options dating or granting practice, procedure, or policy; Comverse's issuance and administration of employee stock options; Comverse's earnings manipulation, finances, or accounting; Comverse's public filings and statements; revenue recognition issues; payments made by individuals in foreign jurisdictions on behalf of Comverse or its Related Persons; audits or reviews of Comverse's consolidated financial statements for the fiscal year ended January 31, 2005, the first three quarters of the fiscal year-end January 31, 2006, or any prior period; the Report of the Special Committee, the Shareholder Class Action, the FBI affidavit in support of arrest warrants issued against defendants Alexander, Kreinberg, and Sorin, or the SEC's complaints against defendants Alexander, Kreinberg, and Sorin that were asserted, or could have been asserted in the Derivative Actions by Comverse, Plaintiffs, or any Comverse Shareholder, derivatively on behalf of Comverse. Notwithstanding any of the foregoing, the Released Claims do not include any nonderivative class claims or claims that already have been asserted in the Shareholder Class Action.

1.27    "Released Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule, or regulation, including both known claims and Unknown Claims, that

have been or could have been asserted in the Derivative Actions or any forum by the Defendants or any of them or the successors, and assigns of any of them against any of the Plaintiffs and Plaintiffs' Counsel and their subsidiaries, affiliates, members, directors, officers, employees, partners, agents, heirs, administrators, successors, and assigns, which arise out of or relate in any way to the institution, prosecution, or settlement of the Derivative Actions (except for claims to enforce the terms of this Settlement).

1.28   "Released Persons" means each and all of the Defendants, and each and all of their respective Related Persons.

1.29   "SEC" means the United States Securities and Exchange Commission.

1.30   "Settlement" means the settlement and compromise of the Derivative Actions as provided for herein.

1.31   "Settlement Hearing" means the hearing or hearings at which the Federal Court will review the adequacy, fairness, and reasonableness of the Settlement.

1.32   "Shareholder(s)" means any holder of record or beneficial holder of Comverse common stock.

1.33   "Shareholder Class Action" means *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-01825 (NGG)(RER), pending in the United States District Court for the Eastern District of New York.

1.34   "Shareholder Class Action Settlement" means (a) an entry of a final order and judgment entered by the court approving the settlement in the Shareholder Class Action and (b) an entry of an order by the court in the Shareholder Class Action finding that common stock issued by Comverse (in lieu of paying in cash a portion of the amounts otherwise required to be

361199.16

paid in cash by the settlement in the Shareholder Class Action) is exempt from registration under Section 3(a)(10) of the Securities Act of 1933.

1.35    "Special Committee" means the committee appointed by the Board on March 10, 2006, to oversee a review of the Company's historical stock option grants, including the administration of a secret options reserve fund and the recycling of unexercised options from departed employees, as well as a review of issues related to revenue recognition and earnings manipulation.

1.36    "State Court" means the Supreme Court of the State of New York, County of New York.

1.37    "State Derivative Action" means *In re Comverse Technology, Inc.*, No. 601272/2006, pending in the Supreme Court of the State of New York, County of New York before the Honorable Richard Lowe III.

1.38    "State Dismissal" means the entry of an order dismissing with prejudice the State Derivative Action.

1.39    "State Lead Plaintiffs" means Leonard Sollins and Timothy Hill.

1.40    "Stipulation" means this Stipulation of Compromise and Settlement.

1.41    "Unknown Claims" means any Released Claims which Comverse, the Plaintiffs, or any Comverse Shareholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons and any Released Defendants' Claims, which any Defendant does not know or suspect to exist in his, her, or its favor, which, if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement. With respect to any and all Released Claims and Released Defendants' Claims, the Parties stipulate and agree that upon the Effective Date, the Plaintiffs and the Defendants shall expressly waive, and any

other Comverse Shareholder shall be deemed to have waived, and by operation of the Order and Final Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Plaintiffs and Defendants acknowledge, and any Comverse Shareholder by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Released Defendants' Claims was separately bargained for and was a key element of the Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

2.1     On March 3, 2006, Comverse received a telephone call from *The Wall Street Journal* regarding unusual patterns in the Company's stock option grants.

2.2     On March 14, 2006, the Company announced the creation of a Special Committee to review matters relating to the Company's stock option grants, including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed.  The objectives of the Special Committee's investigation were to discover whether the Company's stock option grants had been backdated and, if so, to determine the extent of such backdating and who was involved, to investigate other practices that were inconsistent with the requirements of the Company's stock option plans, including the recycling of unexercised options from departed employees to other employees, and to investigate option

10

grants to fictitious accounts. The Special Committee also performed an investigation of issues relating to revenue recognition and earnings manipulation.

2.3     On March 18, 2006, *The Wall Street Journal* published an article titled "The Perfect Payday" reporting that several companies, including Comverse, had peculiar patterns of option granting, and questioning the accuracy of the stated dates of certain option grants.

2.4     On or about April 11, 2006, the State Derivative Action was brought on behalf of the Company, alleging that certain defendants improperly engaged in, approved, and/or benefited from the "backdating" of stock options grants beginning in approximately 1991. The initial State Derivative Action was ultimately consolidated with various other shareholder actions and a Consolidated and Amended Shareholder Derivative Complaint was filed on or about September 18, 2006.

2.5     The Federal Derivative Action was initially commenced on or about April 20, 2006, similarly alleging that certain defendants improperly engaged in, approved, and benefited from the "backdating" of stock option grants, and that Comverse's financial results were inaccurate as a result. The initial federal derivative action was ultimately consolidated with various other shareholder actions, and a Consolidated, Amended and Verified Shareholder Derivative Complaint was filed on or about October 6, 2006.

2.6     On December 20, 2007, and December 21, 2007, the defendants in the Federal Derivative Action filed various motions to dismiss and, on December 21, 2007, the Federal Lead Plaintiff filed its omnibus opposition to defendants' motion to dismiss.

2.7     On January 10, 2007, Comverse filed its motion to dismiss for failure to make a pre-suit demand in the State Derivative Action. On March 20, 2007, State Lead Plaintiffs filed their opposition to Comverse's motion to dismiss.

11

2.8      During the briefing of Comverse's motion to dismiss the State Derivative Action, Comverse and the State Lead Plaintiffs, through their counsel, had several discussions regarding the litigation.

2.9      Comverse voluntarily provided State Lead Plaintiffs with limited discovery, and State Lead Plaintiffs provided the Special Committee with certain information obtained through State Lead Plaintiffs' own independent investigation. Information provided to the Special Committee concerning the earnings manipulation was included in Comverse's filing with the SEC in its Form 8-K dated January 29, 2008.

2.10     By Decision and Order dated August 7, 2007, Justice Lowe granted Nominal Defendant Comverse's motion to dismiss the State Derivative Action.  On November 7, 2007, the State Lead Plaintiffs appealed the August 7, 2007 Decision and Order of the State Court.

2.11     On January 16, 2008, the Company filed a lawsuit in the Supreme Court of the State of New York, County of New York, captioned *Comverse Technology, Inc. v. Alexander*, No. 08/600142, against Mr. Alexander and Mr. Sorin asserting claims of fraud, breach of fiduciary duty, and unjust enrichment arising out of the options backdating scheme.  On June 3, 2008, as part of this action against Mr. Alexander, the Company obtained an attachment order against the Alexander Apartments.  Mr. Alexander and Mr. Sorin alleged counterclaims against Comverse.

2.12     On January 17, 2008, the Company filed a lawsuit against Mr. Kreinberg in the Superior Court of New Jersey, Bergen County.  This action was subsequently re-filed in the Supreme Court of the State of New York, County of New York, captioned *Comverse Technology, Inc. v. Kreinberg*, No. 600052/09.  The complaint alleged fraud, breach of fiduciary duty, and unjust enrichment arising out of the options backdating scheme.

361199.16

2.13    On April 22, 2008, defendants' motions to dismiss the Federal Derivative Action were held in abeyance pending the resolution of State Lead Plaintiffs' appeal in the Supreme Court of the State of New York, Appellate Division, First Department.  By decision and order dated October 7, 2008, the Appellate Division, First Department reversed Justice Lowe's August 7, 2007 Decision and Order and ordered that the complaint in the State Derivative Action be reinstated.

2.14    After the complaint was reinstated in the State Derivative Action, discovery in the Derivative Actions proceeded, including the production by Comverse of approximately 200,000 pages of documents.

2.15    The motions to dismiss in the Federal Derivative Action remain outstanding, and (other than a motion filed by one of the Individual Defendants, which was withdrawn without prejudice subject to restoration on the existing record if the Settlement is not consummated) motions to dismiss were never filed (or re-filed) in the State Derivative Action.  The time to respond to the State Derivative Complaint was extended and has not expired.

2.16    On January 12, 2009, the State Lead Plaintiffs attended a mediation with the Honorable Daniel Weinstein (Ret.) of JAMS.

2.17    After the January 12, 2009 mediation, the Parties engaged in discussions and negotiations regarding a possible negotiated resolution of the claims in the Derivative Actions. Plaintiffs' Counsel met several times with counsel for the Special Committee and with the Company's counsel in the Shareholder Class Action to discuss possible settlement terms. Plaintiffs' Counsel, together with the Special Committee's counsel and the Company's counsel in the Shareholder Class Action, also met with counsel for defendants Alexander, Sorin, and Kreinberg.  Plaintiffs' Counsel also held multiple telephone conferences with various

defendants' counsel, the Special Committee's counsel, and the Company's counsel in the Shareholder Class Action, concerning possible settlement terms.

2.18    During their settlement discussions following the January 12, 2009 mediation, the Parties continued to engage in formal discovery, including several depositions of key witnesses.

2.19    By May 2009, the Parties had agreed upon a settlement with all defendants except Mr. Alexander, and the Parties updated Justice Lowe in that regard.

2.20    On May 11, 2009, the State Lead Plaintiffs, the Federal Lead Plaintiff, the Company's counsel in the Shareholder Class Action, the Special Committee's counsel, and Alexander participated in another mediation with Judge Weinstein.

2.21    After the mediation, Comverse and Plaintiffs reached a settlement in principle with Mr. Alexander.

2.22    On July 15, 2009, the parties to the Shareholder Class Action reached an agreement in principle to settle the Shareholder Class Action.

2.23    Comverse and Plaintiffs believe that the proposed Settlement is in the best interests of Comverse and Comverse's Shareholders.

2.24    In sum, for approximately one year, the Parties engaged in extensive negotiations, with and without a mediator's assistance, regarding a potential settlement of the Derivative Actions.  To that end, counsel for the Parties have met in person, participated in numerous telephonic conferences and other communications, exchanged information and documents, and conducted confirmatory investigation.  Several Parties have also participated in mediation sessions with Judge Weinstein.  All such settlement negotiations were conducted at

14

arm's length and in good faith.  As a result of these settlement negotiations, the Parties ultimately agreed to the terms contained herein.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the undersigned counsel for the Parties herein that the Released Claims shall be and hereby are compromised, settled, discontinued, and dismissed with prejudice and without costs (except as defined herein) as to all Released Persons upon the following terms and conditions.

## III.  <u>SETTLEMENT OF DERIVATIVE ACTIONS</u>

3.1  <u>Defendants' Denial of Liability</u>.  Subject to Mr. Sorin's allocution in connection with his guilty plea[2] relating to the backdating scheme, each of the Individual Defendants (other than Mr. Kreinberg) and D&T have denied and continue to deny all of the claims in the Derivative Actions, and have denied and continue to deny having committed, aided, or attempted to commit any violations of law or breach of any duty of any kind or otherwise having acted in any improper manner.  Mr. Kreinberg neither admits nor denies the allegations made in the Derivative Actions and the Direct Actions.  Comverse denies the allegations made in the Derivative Actions and Shareholder Class Action to the extent the allegations are inconsistent with the Company's public filings.  The Defendants are entering into the Stipulation because the proposed Settlement would eliminate the expenses, burdens, and risks associated with further litigation of the Derivative Actions and Direct Actions, and Comverse is doing so because it additionally believes the proposed Settlement is in the best interests of Comverse and all of its Shareholders.

3.2  <u>Reliance Upon Own Knowledge</u>.  Plaintiffs expressly represent and warrant that, in entering into the Settlement, they relied upon their own knowledge and investigation

---

[2] Mr. Sorin's allocution and guilty plea are the subject of a habeas proceeding, and he otherwise denies any wrongdoing.

361199.16

(including the knowledge of and investigation performed by Plaintiffs' Counsel), and not upon any promise, representation, warranty, or other statement made by or on behalf of any of the Defendants or their Related Persons not expressly contained in this Stipulation.

     3.3    <u>Principal Terms of Settlement</u>.  The Derivative Actions were a contributing factor in Comverse's ability to obtain the monetary settlement payments set forth in Subsection 3.3.1 below and its decision to implement the actions set forth in Subsection 3.3.2 below. Comverse and the Special Committee acknowledge that the monetary settlement payments and corporate governance actions implemented by the Company confer substantial benefits upon Comverse and its Shareholders.

     3.3.1   <u>Payments and Option Surrenders</u>.

        a.    Mr. Alexander's contribution to this Settlement, and the terms and conditions thereof, are set forth in Exhibit C, and are incorporated herein.

        b.    Mr. Sorin will, conditioned upon the dismissal with prejudice of the claims against him in the Derivative Actions and *Comverse Technology, Inc. v. Alexander*, No. 08/600142, and upon the releases and contribution bar order contained herein, pay $1,000,000 (the "Sorin Cash Settlement Amount") as follows: $500,000 will be paid into escrow for the benefit of Comverse upon execution of this Stipulation, and another $500,000 will be paid to Comverse within two (2) years of the Effective Date. (Mr. Sorin has also previously paid $3,088,424.10 to the SEC.) In the event that there is any nonpayment by Mr. Sorin of any of the $500,000 due within two (2) years of the Effective Date, then Comverse's counsel and Plaintiffs' Counsel will have the option to terminate this Settlement as against Mr. Sorin by vacating the Order and Final Judgment and the dismissal of *Comverse Technology, Inc. v. Alexander*, No. 08/600142, and the State Derivative Action as against Mr. Sorin only or to enter a consent judgment against Mr. Sorin for the amount due, up to $500,000. If the Effective Date fails to

occur with respect to Mr. Sorin, other than by reason of Mr. Sorin's conduct, then Mr. Sorin's payment will be returned, along with any accrued interest and net of any taxes on the income.  In addition, Mr. Sorin will relinquish his counterclaims against Comverse seeking approximately $2,206,250 in damages relating to, among other things, deferred compensation, lost wages, and cancelled or revoked options and restricted stock.  To the extent that there is a settlement in the Shareholder Class Action, Comverse shall obtain a full and final release on behalf of Mr. Sorin without further contribution from Mr. Sorin in the Shareholder Class Action.

             c.     Mr. Kreinberg will, conditioned upon the dismissal with prejudice of the claims against him in the Derivative Actions and *Comverse Technology, Inc. v. Kreinberg*, No. 09/600052, (N.Y. Sup. Ct.) (the "Kreinberg Action") and upon the releases and contribution bar order contained herein, and in addition to the $2,394,917.68 that Mr. Kreinberg has previously paid to the SEC, pay $75,000 (the "Kreinberg Cash Settlement Amount") into escrow for the benefit of Comverse within ten (10) days of entry of the Preliminary Order.  If the Effective Date fails to occur with respect to Mr. Kreinberg, other than by reason of Mr. Kreinberg's conduct, then Mr. Kreinberg's payment will be returned, along with any accrued interest and net of any taxes on the income.  In addition, upon the discontinuance with prejudice of the claims against him in the Kreinberg Action, Mr. Kreinberg will relinquish his counterclaims against Comverse seeking approximately $4,300,000 in damages relating to, among other things, deferred compensation, lost wages, and cancelled or revoked options and restricted stock and an additional approximately $1,000,000 in attorneys' fees for which Mr. Kreinberg has been seeking indemnification from the Company, and to fully cooperate with Comverse in the prosecution of any claims related to the Released Claims.  To the extent that there is a settlement in the Shareholder Class Action, Comverse shall obtain a full and final

361199.16

release on behalf of Mr. Kreinberg without further contribution from Mr. Kreinberg in the Shareholder Class Action.

        d.    D&T will, conditioned upon the dismissal with prejudice of the claims against it in the State Derivative Action and upon the releases and contribution bar order contained herein, pay $275,000 (the "D&T Cash Settlement Amount") into the Derivative Settlement Fund upon the Effective Date.

        e.    Mr. Friedman will, conditioned upon the dismissal with prejudice of the claims against him in the Derivative Actions and upon the releases and contribution bar order contained herein, relinquish all of his 71,000 outstanding unexercised options.  Upon the Effective Date, Mr. Friedman relinquishes all right, title, and interest that he may have to the 71,000 outstanding unexercised options to acquire shares of the Company held by him and agrees that all rights thereunder, including under the relevant option agreements, shall be null and void.  Within ten (10) days of the Effective Date, the Company will remove Mr. Friedman's options from its books.  Between the date of the execution of this Stipulation and the time at which the Company removes these 71,000 outstanding unexercised options from its books, Mr. Friedman will refrain from exercising, disposing, or taking any other action with respect to these options.  In addition, Mr. Friedman will forfeit any claims concerning deferred compensation or the grant or exercise of any options, except claims concerning his interest in 6,500 vested shares of deferred stock.  To the extent that there is a settlement in the Shareholder Class Action, Comverse shall obtain a full and final release on behalf of Mr. Friedman without further contribution from Mr. Friedman in the Shareholder Class Action.

        f.    Mr. Oolie will, conditioned upon the dismissal with prejudice of the claims against him in the Derivative Actions and upon the releases and contribution bar order

contained herein, relinquish all of his 44,000 outstanding unexercised options. Upon the Effective Date, Mr. Oolie relinquishes all right, title, and interest that he may have to the 44,000 outstanding unexercised options to acquire shares of the Company held by him and agrees that all rights thereunder, including under the relevant option agreements, shall be null and void. Within ten (10) days of the Effective Date, the Company will remove Mr. Oolie's options from its books. Between the date of the execution of this Stipulation and the time at which the Company removes these 44,000 outstanding unexercised options from its books, Mr. Oolie will refrain from exercising, disposing, or taking any other action with respect to these options. In addition, Mr. Oolie will forfeit any claims concerning deferred compensation or the grant or exercise of any options, except claims concerning his interest in 6,500 vested shares of deferred stock and his alleged and disputed interest in up to 11,000 warrants. To the extent that there is a settlement in the Shareholder Class Action, Comverse shall obtain a full and final release on behalf of Mr. Oolie without further contribution from Mr. Oolie in the Shareholder Class Action.

g. Mr. Hiram will, conditioned upon the dismissal with prejudice of the claims against him in the Derivative Actions and upon the releases and contribution bar order contained herein, relinquish 40,500 of the outstanding unexercised options he holds. Upon the Effective Date, Mr. Hiram relinquishes all right, title, and interest that he may have to 40,500 outstanding unexercised options to acquire shares of the Company held by him and agrees that all rights thereunder, including under the relevant option agreements, shall be null and void. Within ten (10) days of the Effective Date, the Company will remove these 40,500 options from its books. Between the date of the execution of this Stipulation and the time at which the Company removes 40,500 of the outstanding unexercised options held by Mr. Hiram, Mr. Hiram will refrain from exercising, disposing, or taking any other action with respect to these options.

361199.16

In addition, Mr. Hiram will forfeit any claims concerning deferred compensation or the grant or exercise of the 40,500 options discussed in this Section, except claims concerning his interest in 4,000 vested shares of deferred stock. To the extent that there is a settlement in the Shareholder Class Action, Comverse shall obtain a full and final release on behalf of Mr. Hiram without further contribution from Mr. Hiram in the Shareholder Class Action.

h. Comverse shall cause Comverse's insurance carrier, on behalf of the Individual Defendants except for Mr. Alexander, Mr. Sorin, and Mr. Kreinberg, to pay to Comverse $1,000,000 (the "Carrier Cash Contribution Amount") within the later of (i) August 30, 2010, or (ii) thirty (30) days of the later of the Federal Dismissal, State Dismissal, or the Shareholder Class Action Settlement. Upon receipt of the Carrier Cash Contribution Amount, Comverse shall deposit said monies into the Derivative Settlement Fund. If the Effective Date fails to occur with respect to the Individual Defendants except for Mr. Alexander, Mr. Sorin, and Mr. Kreinberg, then the Carrier Cash Contribution Amount will be returned directly to Comverse's insurance carrier in accordance with instructions provided by Comverse, along with any accrued interest and net of any taxes on the income.

i. None of these settlements for monetary payments from or options surrenders by Mr. Alexander, Mr. Sorin, Mr. Kreinberg, D&T, Mr. Friedman, Mr. Oolie, and Mr. Hiram, are contingent upon approval of any of the others and all of them are severable from one another, and the Order and Final Judgment may be modified accordingly in the event the Federal or State Court fails to approve the Settlement with a particular Defendant or Defendants; except that any such modification shall not affect or alter the contribution bar order provided in Subsection 3.7 for the benefit of any other Defendant, and its Related Persons, as to which this Settlement is approved and the Effective Date occurs. Mr. Alexander has a right to terminate his

361199.16

settlement in the Shareholder Class Action and in the Derivative Actions.  Notwithstanding Mr. Alexander's termination of his settlement in the Shareholder Class Action and/or the Derivative Actions, this Settlement in the Derivative Actions and this Stipulation between the Parties other than Mr. Alexander shall continue in full force and effect on the terms described herein.

> j.     Upon deposit of the Sorin, Kreinberg, and D&T Cash Settlement Amounts and Carrier Cash Contribution Amount into escrow, these Amounts and any income or interest earned thereon shall be the "Derivative Settlement Fund."  Plaintiffs' Counsel has a security interest in the Derivative Settlement Fund in the amount of the attorneys' fees and reimbursements for Plaintiffs' Counsel ("Fees and Expenses") awarded by the Federal Court. The Company will execute a security agreement granting a security interest and will file a financing statement to reflect such interest.  Any sums required to be held in escrow hereunder prior to the Effective Date shall be held by a federally chartered bank designated by Comverse as escrow agent (the "Escrow Agent").  All funds held by the Escrow Agent shall be deemed to be in the custody of the Federal Court and shall remain subject to the jurisdiction of the Federal Court until the Effective Date.  Upon the Federal Dismissal, State Dismissal, and Shareholder Class Action Settlement, the Derivative Settlement Fund shall be distributed to the Company.  If the Effective Date fails to occur by reason other than a Defendant's failure to comply with his or its obligations under Section 3.3.1, then the Escrow Agent, or Comverse, to the extent funds were distributed to Comverse, will return the funds to each payor respectively pursuant to this Stipulation and/or further order of the Federal Court.  The Escrow Agent shall invest any funds held in escrow in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon. The Parties hereto agree that the Derivative Settlement Fund is intended to be a Qualified

Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Company, as administrator of the Derivative Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Derivative Settlement Fund and paying from the Derivative Settlement Fund any taxes owed with respect to the Derivative Settlement Fund.  The Parties hereto agree that the Derivative Settlement Fund shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the Derivative Settlement Fund as a Qualified Settlement Fund from the earliest date possible.  The Escrow Agent shall provide to any Defendant making payment to the Derivative Settlement Fund a copy of IRS Form W-9 for the Qualified Settlement Fund. Counsel for any Defendant making payment to the Derivative Settlement Fund agree to provide promptly to the Escrow Agent the statement described in Treasury Regulation § 1.468B-3(e).

   3.3.2 <u>Corporate Governance</u>. In connection with resolving the Derivative Actions, Comverse has taken certain actions and adopted certain policies including, but not limited to:

     a. All directors who served on the Board at any time during which stock options were backdated are no longer on the Board.

     b. Other than the Chief Executive Officer, all members of the Board will be "independent" as defined by heightened standards adopted by the Board.

     c. The senior management in place at the Company when the Special Committee began its investigation is no longer with the Company.

     d. The Company has made the following changes to its management team: (1) the hiring of a new Chief Executive Officer; (2) the hiring of a new General Counsel; (3) the hiring of a new Chief Financial Officer; (4) the hiring of a new Compliance Officer;

(5) the hiring of a new Executive Vice President, Global Human Resources; and (6) the hiring of a Chief Accounting Officer.

  e. The Chairman of the Board will be an independent director.

  f. The positions of Chairman of the Board and Chief Executive Officer will be held by different persons.

  g. The Board's Corporate Governance Guidelines and Principles, all committee charters, and the Company's Employee Code of Business Conduct and Ethics were reviewed and revised.

  h. All nonemployee directors will hold one-half of all stock received as compensation (after sale of that portion that may be necessary for payment of tax liability) for at least as long as they continue to serve on the Board.

  i. The Company's bylaws were amended to permit certain long-term substantial shareholders to propose, in the Company's own proxy materials, nominees for election as directors (proxy access).

  j. The Board adopted a policy that provides, among other things, that: (1) as a condition for nomination or re-nomination, a director nominee will agree to submit a letter of resignation from the Board if the director fails to receive a majority of the votes cast in an uncontested election, and (2) if a resignation is submitted, the Board will decide, through a process managed by the Corporate Governance and Nominating Committee (and excluding the nominee in question), whether to accept such resignation, it being expected that the Board will accept the resignation absent a compelling reason to the contrary (a Form 8-K to be filed to disclose the Board's explanation of its decision).

361199.16

k.      The Board adopted a policy requiring directors to attend the annual meeting of shareholders absent unusual circumstances.

l.      A Board Development Program is in the process of being developed, which will encourage directors to attend at least one director development program or conference per year.

m.      The Board adopted a policy that at least one member of the Audit Committee will qualify as an "audit committee financial expert" as defined by the SEC.

n.      An internal audit unit that reports directly to the Audit Committee was created.

o.      The Special Committee has determined that all equity grants shall require approval of both the Compensation Committee and a majority of the nonemployee members of the Board, unless and until a new stock incentive compensation plan has been approved.

3.4      Notice.  Comverse shall be responsible for all costs of any court-directed notice to the shareholders.  In no event shall the Plaintiffs be responsible for any costs relating to notifying shareholders.

3.5      Attorneys' Fees and Expenses.

3.5.1    Subject to court approval, Comverse and/or its successors-in-interest shall pay, to Plaintiffs' Counsel, Fees and Expenses in the total amount of $9,350,000.  Payment of $9,350,000 is contingent upon the courts' approval of the Stipulation of Compromise and Settlement, the Federal Dismissal, the State Dismissal, the Shareholder Class Action Settlement, and satisfaction of all payment obligations under Section 3.3.1.  In the event that a Party fails to comply with his obligations under Section 3.3.1, Fees and Expenses will be reduced by an

361199.16

amount such that the total payment of Fees and Expenses does not exceed fifteen (15) percent of the total amounts actually paid under Section 3.3.1. Comverse and/or its respective successors-in-interest shall pay the Fees and Expenses to Milberg LLP as receiving agent for Plaintiffs' Counsel within the later of (i) August 30, 2010, or (ii) thirty (30) days of the later of the State Dismissal, the Federal Dismissal, or the Shareholder Class Action Settlement. Plaintiffs' Counsel's receipt of the Fees and Expenses is subject to Plaintiffs' Counsel's joint and several obligation to make a refund or repayment to the Company or its designee if, as a result of any appeal and/or further proceedings on remand, or successful collateral attacks, the amount of Fees and Expenses is reduced. Plaintiffs' Counsel has a security interest in the Derivative Settlement Fund in the amount of the Fees and Expenses.

3.5.2   Except as expressly provided herein, Plaintiffs and Plaintiffs' Counsel shall bear their own fees, costs, and expenses and no defendant shall assert any claim for expenses, costs, and fees against any Plaintiff or Plaintiffs' Counsel.

3.5.3   Except as otherwise provided herein or by separate agreement among the Defendants, all Parties shall bear their own attorneys' fees and costs incurred in connection with the Derivative Actions and the matters set forth in this Stipulation.

3.6    Releases.

3.6.1   Upon the Effective Date, Plaintiffs, on behalf of themselves and their Related Persons, Comverse, and any Comverse Shareholder, release any Released Claims they may have against any of the Released Persons. Plaintiffs also release all claims against the Defendants' counsel related to the defense of the Derivative Actions.

3.6.2   Upon the Effective Date, each Defendant, on behalf of himself or itself and on behalf of his or its respective Related Persons, releases any Released Defendants' Claims

they may have against any of the Plaintiffs and Plaintiffs' Counsel and their subsidiaries, affiliates, members, directors, officers, employees, partners, agents, heirs, administrators, successors, and assigns.

      3.6.3  Upon the Effective Date, each Defendant and his or its Related Persons shall be deemed to have, and by operation of this Stipulation shall have fully, finally, and forever released, relinquished, and discharged each other and their respective Related Persons from all claims (including Unknown Claims), arising out of, relating to, or in connection with the Released Claims.  Notwithstanding any other provision of this Stipulation or anything contained in any Exhibit hereto to the contrary, nothing in this Stipulation or in any Exhibit hereto shall be construed to (a) release, discharge, extinguish, or otherwise compromise any claims or potential claims that Comverse or any Person who is or was a defendant in the Derivative Actions may have under or relating to any policy of liability or other insurance, (b) release, discharge, extinguish, or otherwise compromise any obligation owed to Comverse or any Person who is or was a defendant in the Derivative Actions by an insurer, co-insurer, or reinsurer, or (c) release or discharge any claim by Deloitte for professional fees now due and owing, or that in the future may become due and owing, by Comverse or any of its affiliates for professional services rendered.  Notwithstanding anything in this paragraph, the exchange of releases between Mr. Alexander and Comverse and the scope of such releases shall be in accordance with the terms set forth in Exhibit C, hereto.

      3.6.4  Notwithstanding any other provision of this Stipulation, the Individual Defendants' rights to indemnification and/or advancement from Comverse are not affected in any way by this Stipulation.

361199.16

3.7    <u>Contribution Bar Order</u>.  Upon the entry of the Order and Final Judgment, each of the Defendants and any other Person shall be deemed to be, and by operation of the Order and Final Judgment shall be, permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim(s) for contribution, however denominated, that is related to, based upon, or arises out of the Released Claims, regardless of whether such claim(s) for contribution is asserted as a claim, cross-claim, counterclaim, third-party claim, or in any other manner, in the Derivative Actions, the Direct Actions, or in any other court, arbitration, administrative agency, or forum.  All such claims for contribution will be extinguished, discharged, satisfied, and unenforceable both (a) against the Released Persons and (b) by the Released Persons against any other Person.  Nothing herein, however, shall prevent any Party from seeking documents or testimony from any Defendant with regard to any proceeding.

3.8    <u>Discontinuance of State Derivative Action</u>.  Within five (5) days after entry by the Federal Court of an order approving the settlement of the Federal Derivative Action, the parties to the State Derivative Action shall execute a stipulation of discontinuance and jointly request that the State Court approve the discontinuance in accordance with New York's Business Corporation Law and shall use their best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements, to secure such discontinuance with prejudice.

3.9    <u>Discontinuance of Claims Against Mr. Alexander, Mr. Sorin, and Mr. Kreinberg</u>.  Within five (5) days after the time for appeals from a final order and judgment approving the Federal and State Derivative Action settlements and Shareholder Class Action settlement has expired, or appeals therefrom have been exhausted, Comverse shall execute a stipulation of discontinuance to be filed with the clerk of the State Court in the Direct Actions providing for

361199.16

the voluntary discontinuance with prejudice of Comverse's claims against Mr. Alexander, Mr. Sorin, and Mr. Kreinberg in the Direct Actions and shall use its reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements, to secure such discontinuance with prejudice.

## IV.  COURT APPROVAL

4.1     <u>Application for Preliminary Order</u>.  Promptly after execution of this Stipulation, the Parties shall jointly submit to the Federal Court this Stipulation with its related documents and shall apply for entry of the Preliminary Order, substantially in the form of Exhibit A hereto, requesting, inter alia, an order which preliminarily approves the Settlement and directs Comverse to notify shareholders by (1) causing the Notice, substantially in the form of Exhibit 1 to Exhibit A, to be filed by the Company in a Form 8-K with the SEC, along with a copy of this Stipulation as an exhibit to the Form 8-K, (2) posting the Notice and this Stipulation on the Company's website through the Settlement Hearing, and (3) publishing the Publication Notice, substantially in the form of Exhibit 2 to Exhibit A, in *The Wall Street Journal*.

4.2     The parties to the State and Federal Derivative Actions shall cooperate in obtaining approval of the Federal and State Courts for dismissal of the State and Federal Derivative Actions with prejudice and in accordance with the terms of this Stipulation and governing law.

## V.  EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

5.1     This Settlement shall become effective on the Effective Date.

5.2     If any of the conditions of the Effective Date fail to occur, then any of the Parties may terminate the Stipulation and withdraw from the Settlement by providing written notice of such action to the undersigned counsel for all of the Parties within thirty (30) days after the

361199.16

failure of such condition.  In the event that the Settlement is terminated, the proposed Settlement and any actions taken in connection therewith shall be vacated and shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (a) shall be without prejudice to the rights of any Party; (b) shall not be deemed to be or construed as evidence of, or an admission by any Party of, any fact, matter, or thing; and (c) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in the Derivative Actions, the Direct Actions, or any other action or proceeding.  The Parties shall be deemed to have reverted to their respective status in the Derivative Actions and/or the Direct Actions as of the date and time immediately prior to the execution of this Stipulation, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related Orders had not been entered, and any portion of the Derivative Settlement Fund previously paid by or on behalf of the Defendants, together with any interest earned thereon, less any taxes due with respect to such income, shall be returned to the Person(s) who made the payments to the Derivative Settlement Fund.

5.3    In the event that any of the Defendants fail to comply with their obligations under Section 3.3.1, the Special Committee's counsel and Plaintiffs' Counsel shall have the option to terminate this Settlement as against the party that failed to comply by voiding the release as against the defaulting Party and its Related Persons and vacating the Order and Final Judgment and the dismissal of the Direct Actions and the State Derivative Action, where applicable, or to enter a consent judgment, against the Party that failed to comply for the amount due under Section 3.3.1.  Funds paid into the Derivative Settlement Fund by the Party that failed to comply may be used to offset the outstanding obligation.  The Special Committee and Plaintiffs' Counsel will cooperate in the enforcement of the obligations arising under this

Stipulation, and prosecution of claims against defaulting defendants. If the Special Committee determines that it does not wish to pursue claims against the defaulting Party, it will assign all of its rights, claims, or causes of action that it could assert pursuant to this Section to Plaintiffs. The rights and obligations of Plaintiffs' Counsel to Fees and Expenses as set forth in Section 3.5.1 shall continue.

 5.4 <u>Standstill Agreement</u>. Pending entry of the Order and Final Judgment and the State Dismissal, Plaintiffs are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Released Claims or participating in coordinated discovery, either directly, representatively, derivatively, or in any other capacity, against any Released Persons. Plaintiffs also agree not to oppose any motion to dismiss any other proceedings to the extent any Released Claims are asserted or continue to be asserted in any court before or after the entry of a judgment based on this Settlement.

## VI. <u>MISCELLANEOUS PROVISIONS</u>

 6.1 All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

 6.2 Each Defendant contributing to the Derivative Settlement Fund warrants as to himself or itself that, as to the payments made by or on behalf of him or it, at the time of such payment that the Defendant made or caused to be made pursuant to this Stipulation, he or it was not insolvent, nor did nor will the payment required to be made by or on behalf of him or it render such Defendant insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This warranty is made by each such Defendant and not by counsel for such Defendant.

361199.16

6.3     If a case is commenced in respect of any Defendant contributing to the Settlement Amount (or any insurer contributing funds to the Cash Settlement Amount on behalf of any Defendant) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Derivative Settlement Fund or any portion thereof by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Derivative Settlement Fund by others, then, at Comverse and Plaintiffs' Counsel's joint election, Comverse and Plaintiffs shall jointly move the Federal Court to vacate and set aside the releases given and judgment entered in favor of the defaulting Defendant(s) pursuant to this Stipulation, which releases and judgment shall be null and void, and Comverse, Plaintiffs, and the defaulting Party shall be restored to their respective positions in the litigation immediately prior to the execution of this Stipulation (except that the contribution bar order shall remain in effect as to the defaulting Party) and any cash amounts in the Derivative Settlement Fund shall be returned as provided in Section 5.2 above.

6.4     <u>Cooperation of the Parties</u>.  The Parties (a) acknowledge that it is their intent to consummate this Settlement and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable efforts to accomplish the foregoing terms and conditions of this Stipulation.  The Parties will seek the Federal Court's approval of the Preliminary Order and, when appropriate, the Order and Final Judgment.

361199.16

6.5     Acknowledgment of Adequate Consideration.   The Parties acknowledge, represent, and warrant to each other that the terms of this Settlement are such that each of the Parties is to receive adequate consideration for the consideration given.

6.6     Continuous Ownership.  Each Plaintiff by its respective counsel represents and warrants that it has continuously owned shares of Comverse common stock throughout the Derivative Actions.

6.7     No Admissions.   The provisions contained in this Stipulation and all negotiations, statements, and proceedings leading up to and in connection therewith are not, shall not be argued to be, and shall not be deemed, a presumption, concession, or admission by any of the Parties or Released Persons of any fault, liability, or wrongdoing as to any fact or claim alleged or asserted in the Derivative Actions or any other actions or proceedings and shall not be interpreted, construed, invoked, offered or received in evidence, or otherwise used by any person in these or any other action or proceeding, whether civil, criminal, or administrative, except in a proceeding to enforce the terms or conditions of this Stipulation.  Accordingly, the Defendants may file this Stipulation or any judgment or order relating thereto in any action that may be brought against them to support a defense or counterclaim based on res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.  Nothing contained herein shall prevent the Defendants from complying with any disclosure obligation under federal, state or other law, or from otherwise referring to the Settlement or the releases contained in this Stipulation.

6.8     Confidentiality Agreements.   The Stipulation and [Proposed] Order for the Production and Exchange of Confidential Information executed by the parties to the State

361199.16

Derivative Action, the Stipulation and [Proposed] Order Governing the Protection and Exchange of Confidential Material executed by the parties to the Federal Derivative Action, and the Stipulation and [Proposed] Order for the Production and Exchange of Confidential Information executed by the parties in *Comverse Technology, Inc. v. Alexander*, No. 08/600142, shall survive this Stipulation and the Settlement.

6.9   Costs. Except as otherwise expressly provided herein, the Parties shall bear their own costs.

6.10   Public Statements.   Plaintiffs and Comverse believe that the terms and conditions of the Settlement are in the best interests of the Company and its Shareholders. Accordingly, the Parties and their counsel agree that any public statements concerning the Derivative Actions, the Direct Actions, or this Settlement will not be inconsistent with this belief.   The Parties and their counsel further agree to use their best efforts not to publicly disparage each other.   Nothing in this Section 6.10 affects any Parties' testimonial rights or any Party's right to make statements consistent with their position in other legal proceedings.

6.11   Entire Agreement.   This Stipulation and all documents executed pursuant hereto constitute the entire agreement between the Parties with respect to the settlement of the Derivative Actions and supersede any and all prior negotiations, discussions, agreements, or undertakings, whether oral or written, with respect to the settlement of the Derivative Actions.

6.12   Binding Effect.   This Stipulation shall be binding upon, and inure to the benefit of all Parties, Released Persons, and their respective successors and assigns.   This Stipulation is not intended, and shall not be construed, to create rights in or confer benefits on any other Persons, and there shall not be any third-party beneficiaries hereto except as expressly provided hereby with respect to such aforementioned Persons who are not Parties or Released Persons.

361199.16

6.13    <u>Modification</u>.  This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interests.

6.14    <u>Judicial Enforcement</u>.  The Federal Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation and the Settlement, and the Parties submit to the jurisdiction of the Federal Court for purposes of implementing and enforcing the terms of the Stipulation and Settlement.

6.15    <u>Choice of Law</u>.  This Stipulation shall be governed by the laws of the State of New York, without regard to conflict of laws principles.  Except as provided herein, no court action with respect to any dispute, claim, or controversy arising out of or relating to this Stipulation may be initiated by any of the Parties until the matter has been submitted to JAMS for mediation, preferably before Judge Weinstein.  Any Party may commence mediation by providing to JAMS and the other Parties a written request for mediation, setting forth the subject of the dispute and the relief requested.  The Parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals (if Judge Weinstein is not available), and in scheduling the mediation proceedings, with the understanding that all Parties shall work in good faith to have the mediation scheduled within thirty (30) days of the transmission of the written mediation request.  The Parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs.  All offers, promises, conduct, and statements, whether oral or written, made in the course of the mediation by any of the Parties, their agents, employees, experts, and attorneys, and by the mediator and any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any litigation or other proceeding involving the Parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or

nondiscoverable as a result of its use in the mediation.  Any of the Parties may seek equitable relief prior to the mediation to preserve the status quo pending the completion of that process. Except for such an action to obtain equitable relief, no Party may initiate a court action with respect to the matters submitted to mediation until after the completion of the initial mediation session, or forty-five (45) days after the date of filing the written request for mediation, whichever occurs first.  Mediation may continue after the initiation of a court action, if the Parties so desire.

6.16    <u>Warranties of Authority</u>.  Each counsel or Person executing the Stipulation or any of the related documents on behalf of any Party hereby warrants that such Person has the full authority to do so.

6.17    <u>Factual and Procedural Background</u>.  The factual recitation in Section II above is for background purposes only, is provided by Comverse and Plaintiffs, and is correct to the best of Comverse's and Plaintiffs' knowledge.

6.18    <u>Waiver of Breach</u>.  The Parties may not waive or vary any right hereunder except by an express written waiver or variation.  Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right.  The waiver by one Party of any breach of this Stipulation by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

6.19    <u>Fair Construction</u>.  This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's length

361199.16

negotiations between the Parties and counsel for all Parties have contributed substantially and materially to the preparation of this Stipulation.

6.20    <u>No Assignment of Claims</u>.  Plaintiffs hereby represent and warrant, individually and collectively, that he/she/it/they have not assigned any rights, claims, or causes of action that were asserted or could have been asserted in connection with, under or arising out of any of the claims being settled or released herein.

6.21    <u>Counterparts</u>.  This Stipulation may be executed in any number of counterparts, each of which will be deemed an original, but all of which will constitute one and the same instrument.  This Stipulation and any amendments hereto, to the extent executed and delivered by means of a facsimile machine or e-mail of a PDF file containing a copy of an executed agreement (or signature page thereto), shall be treated in all respects and for all purposes as an original agreement or instrument and shall have the same binding legal effect as if it were the original signed version thereof.  No Party shall raise the use of a facsimile machine or e-mail to deliver a signature or the fact that any signature or agreement was transmitted or communicated through the use of a facsimile machine or e-mail as a defense to the formation or the enforceability of this Stipulation and each such Person forever waives any such defense.

6.22    <u>Stay of Proceedings</u>.  The Parties will cooperate to seek court approval of a stay of all proceedings in the Derivative Actions except those provided in this Stipulation related to court approval of the Settlement.

6.23    <u>Extensions of Time</u>.  Without further order of the Federal Court, the Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of this Stipulation.

361199.16

The Parties have caused this Stipulation to be duly executed and delivered by their counsel of record:

Dated: New York, New York
December 11, 2009

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

By: _Steven Singer/LHG_
    Steven B. Singer
    Mark Lebovitch
    Laura Helen Gundersheim

1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400
*Attorneys for Plaintiff Louisiana Municipal
Police Employees' Retirement System*

Dated: Radnor, Pennsylvania
December 17, 2009

BARROWAY TOPAZ KESSLER
    MELTZER & CHECK, LLP

By: _____
    Eric L. Zagar
    Michael Wagner
    Tara P. Kao
280 King of Prussia Road
Radnor, Pennsylvania
(610) 822-2209
*Attorneys for Plaintiffs Leonard Sollins and
Timothy Hill*

Dated: New York, New York
December 17, 2009

MILBERG LLP

By: _____
    Benjamin Y. Kaufman
    Neil Fraser
    Todd L. Kammerman

One Pennsylvania Plaza
New York, New York 10119
(212) 594-5300
*Attorneys for Plaintiffs Leonard Sollins and
Timothy Hill*

37

361199.16

Dated: New York, New York
    December __, 2009

DICKSTEIN SHAPIRO LLP


By: _____
    Daniel J. Horwitz
    Donald A. Corbett
    Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse
Technology, Inc.*


Dated: New York, New York
    December __, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
    Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
    December __, 2009

BAKER BOTTS LLP


By:_____
    Seth Taube
    Richard Harper
    Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
    December __, 2009

MORVILLO, ABRAMOWITZ, GRAND,
    IASON, ANELLO & BOHRER, P.C.


By:_____
    Robert G. Morvillo
    Edward Spiro
    Jeremy Temkin
    Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
    December __, 2009

DECHERT LLP


By:_____
    David Hoffner
    Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
    December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP


By:_____
    Arthur Aufses
    Yehudis Lewis
    Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman
and Sam Oolie*

361199.16

Dated: New York, New York
December __, 2009

DICKSTEIN SHAPIRO LLP


By:_____
    Daniel J. Horwitz
    Donald A. Corbett
    Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse
Technology, Inc.*


Dated: New York, New York
December 17, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
    Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
December __, 2009

BAKER BOTTS LLP


By:_____
    Seth Taube
    Richard Harper
    Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
December __, 2009

MORVILLO, ABRAMOWITZ, GRAND,
    IASON, ANELLO & BOHRER, P.C.


By:_____
    Robert G. Morvillo
    Edward Spiro
    Jeremy Temkin
    Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
December __, 2009

DECHERT LLP


By:_____
    David Hoffner
    Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP


By:_____
    Arthur Aufses
    Yehudis Lewis
    Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman
    and Sam Oolie*

38

361199.16

Dated: New York, New York
    December __, 2009

DICKSTEIN SHAPIRO LLP


By:_____
    Daniel J. Horwitz
    Donald A. Corbett
    Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse
Technology, Inc.*


Dated: New York, New York
    December __, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
    Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
    December __, 2009

BAKER BOTTS LLP

By:_____
    Seth Taube
    Richard Harper
    Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
    December __, 2009

MORVILLO, ABRAMOWITZ, GRAND,
    IASON, ANELLO & BOHRER, P.C.


By:_____
    Robert G. Morvillo
    Edward Spiro
    Jeremy Temkin
    Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
    December __, 2009

DECHERT LLP


By:_____
    David Hoffner
    Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
    December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP


By:_____
    Arthur Aufses
    Yehudis Lewis
    Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman
    and Sam Oolie*

361199.16

Dated: New York, New York
      December __, 2009

DICKSTEIN SHAPIRO LLP


By:_____
      Daniel J. Horwitz
      Donald A. Corbett
      Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse
Technology, Inc.*


Dated: New York, New York
      December __, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
      Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
      December __, 2009

BAKER BOTTS LLP


By:_____
      Seth Taube
      Richard Harper
      Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
      December רי, 2009

MORVILLO, ABRAMOWITZ, GRAND,
      IASON, ANELLO & BOHRER, P.C.


By:_____
      Robert G. Morvillo
      Edward Spiro
      Jeremy Temkin
      Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
      December __, 2009

DECHERT LLP


By:_____
      David Hoffner
      Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
      December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP


By:_____
      Arthur Aufses
      Yehudis Lewis
      Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman
and Sam Oolie*


38

Dated: New York, New York
    December __, 2009

DICKSTEIN SHAPIRO LLP


By:_____
    Daniel J. Horwitz
    Donald A. Corbett
    Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse Technology, Inc.*


Dated: New York, New York
    December __, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
    Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
    December __, 2009

BAKER BOTTS LLP


By:_____
    Seth Taube
    Richard Harper
    Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
    December __, 2009

MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C.


By:_____
    Robert G. Morvillo
    Edward Spiro
    Jeremy Temkin
    Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
    December __, 2009

DECHERT LLP


By:_____
    David Hoffner
    Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
    December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP


By:_____
    Arthur Aufses
    Yehudis Lewis
    Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman and Sam Oolie*

361199.16

Dated: New York, New York
     December __, 2009

DICKSTEIN SHAPIRO LLP


By:_____
     Daniel J. Horwitz
     Donald A. Corbett
     Lindsay A. Bush
1633 Broadway
New York, New York 10019
(212) 277-6500
*Attorneys for Nominal Defendant Comverse
Technology, Inc.*


Dated: New York, New York
     December __, 2009

GIBSON, DUNN & CRUTCHER LLP


By:_____
     Joel M. Cohen
200 Park Avenue
New York, New York 10166
(212) 351-4000
*Attorneys for Defendant Itsik Danziger*


Dated: New York, New York
     December __, 2009

BAKER BOTTS LLP

By:_____
     Seth Taube
     Richard Harper
     Ian Hummel
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2500
*Attorneys for Defendant Ron Hiram*


Dated: New York, New York
     December __, 2009

MORVILLO, ABRAMOWITZ, GRAND,
     IASON, ANELLO & BOHRER, P.C.


By:_____
     Robert G. Morvillo
     Edward Spiro
     Jeremy Temkin
     Erica Sparkler
565 Fifth Avenue
New York, New York 10017
(212) 856-9600
*Attorneys for Defendant Jacob ("Kobi") Alexander*


Dated: New York, New York
     December __, 2009

DECHERT LLP


By:_____
     David Hoffner
     Robert Topp
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Defendant David Kreinberg*


Dated: New York, New York
     December __, 2009

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: *Arthur W. Aufses*
     Arthur Aufses
     Yehudis Lewis
     Guillaine Senecal
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9234
*Attorneys for Defendants John Friedman
and Sam Oolie*

38

Dated: New York, New York
    December ___, 2009

KOBRE & KIM LLP


By: _____
    Steven Perlstein
    Steven Kobre
800 Third Avenue
New York, New York 10022
(212) 488-1207
*Attorneys for Defendant Igal Nissim*

Dated: New York, New York
    December /7, 2009

LANKLER SIFFERT & WOHL LLP


By: _____
    Derek Chan
    John Siffert
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Zeev Bregman*

Dated: New York, New York
    December ___, 2009

LAW OFFICES OF THOMAS P. PUCCIO


By: _____
    Thomas Puccio
230 Park Avenue, Suite 301
New York, New York 10169
(212) 883-6383
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December ___, 2009

LAW OFFICE OF HENRY PUTZEL, III


By: _____
    Henry Putzel, III
    Lucia T. Chapman
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 661-0066
*Attorneys for Defendant Shaula Yemini*

Dated: New York, New York
    December ___, 2009

LAW OFFICES OF SOLOMON N. KLEIN


By: _____
    Solomon N. Klein
1410 Broadway - Suite 1802
New York, NY 10018
(212) 575-0202
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December ___, 2009

MORRISON & FOERSTER LLP


By: _____
    Jack Auspitz
    Jamie Levitt
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
*Attorneys for Defendant Dan Bodner*

39

361199.16

Dated: New York, New York
     December __, 2009

KOBRE & KIM LLP


By:_____
     Steven Perlstein
     Steven Kobre
800 Third Avenue
New York, New York 10022
(212) 488-1207
*Attorneys for Defendant Igal Nissim*

Dated: New York, New York
     December __, 2009

LANKLER SIFFERT & WOHL LLP

By:_____
     Derek Chan
     John Siffert
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Zeev Bregman*

Dated: New York, New York
     December __, 2009

LAW OFFICES OF THOMAS P. PUCCIO


By:_____
     Thomas Puccio
230 Park Avenue, Suite 301
New York, New York 10169
(212) 883-6383
*Attorneys for Defendant William Sorin*

Dated: New York, New York
     December __, 2009

LAW OFFICE OF HENRY PUTZEL, III


By:_____
     Henry Putzel, III
     Lucia T. Chapman
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 661-0066
*Attorneys for Defendant Shaula Yemini*

Dated: New York, New York
     December __, 2009

LAW OFFICES OF SOLOMON N. KLEIN


By:_____
     Solomon N. Klein
1410 Broadway - Suite 1802
New York, NY 10018
(212) 575-0202
*Attorneys for Defendant William Sorin*

Dated: New York, New York
     December __, 2009

MORRISON & FOERSTER LLP


By:_____
     Jack Auspitz
     Jamie Levitt
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
*Attorneys for Defendant Dan Bodner*

361199.16

Dated: New York, New York
     December ___, 2009

KOBRE & KIM LLP


By:_____
     Steven Perlstein
     Steven Kobre
800 Third Avenue
New York, New York 10022
(212) 488-1207
*Attorneys for Defendant Igal Nissim*

Dated: New York, New York
     December ___, 2009

LANKLER SIFFERT & WOHL LLP


By:_____
     Derek Chan
     John Siffert
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Zeev Bregman*

Dated: New York, New York
     December ___, 2009

LAW OFFICES OF THOMAS P. PUCCIO


By:_____
     Thomas Puccio
230 Park Avenue, Suite 301
New York, New York 10169
(212) 883-6383
*Attorneys for Defendant William Sorin*

Dated: New York, New York
     December ___, 2009

LAW OFFICE OF HENRY PUTZEL, III


By:_____
     Henry Putzel, III
     Lucia T. Chapman
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 661-0066
*Attorneys for Defendant Shaula Yemini*

Dated: New York, New York
     December 17, 2009

LAW OFFICES OF SOLOMON N. KLEIN


By:_____
     Solomon N. Klein
1410 Broadway - Suite 1802
New York, NY 10018
(212) 575-0202
*Attorneys for Defendant William Sorin*


Dated: New York, New York
     December ___, 2009

MORRISON & FOERSTER LLP


By:_____
     Jack Auspitz
     Jamie Levitt
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
*Attorneys for Defendant Dan Bodner*

361199.16

Dated: New York, New York
    December ___, 2009

KOBRE & KIM LLP


By:_____
    Steven Perlstein
    Steven Kobre
800 Third Avenue
New York, New York 10022
(212) 488-1207
*Attorneys for Defendant Igal Nissim*

Dated: New York, New York
    December ___, 2009

LANKLER SIFFERT & WOHL LLP


By:_____
    Derek Chan
    John Siffert
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Zeev Bregman*

Dated: New York, New York
    December ___, 2009

LAW OFFICES OF THOMAS P. PUCCIO


By:_____
    Thomas Puccio
230 Park Avenue, Suite 301
New York, New York 10169
(212) 883-6383
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December ___, 2009

LAW OFFICE OF HENRY PUTZEL, III


By:_____
    Henry Putzel, III
    Lucia T. Chapman
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 661-0066
*Attorneys for Defendant Shaula Yemini*

Dated: New York, New York
    December 17, 2009

LAW OFFICES OF SOLOMON N. KLEIN


By:_____
    Solomon N. Klein
1410 Broadway - Suite 1802
New York, NY 10018
(212) 575-0202
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December ___, 2009

MORRISON & FOERSTER LLP


By:_____
    Jack Auspitz
    Jamie Levitt
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
*Attorneys for Defendant Dan Bodner*

39

361199.16

Dated: New York, New York
    December __, 2009

KOBRE & KIM LLP


By:_____
        Steven Perlstein
        Steven Kobre
800 Third Avenue
New York, New York 10022
(212) 488-1207
*Attorneys for Defendant Igal Nissim*

Dated: New York, New York
    December __, 2009

LANKLER SIFFERT & WOHL LLP


By:_____
        Derek Chan
        John Siffert
500 Fifth Avenue, 33rd Floor
New York, New York 10110
(212) 921-8399
*Attorneys for Defendant Zeev Bregman*

Dated: New York, New York
    December __, 2009

LAW OFFICES OF THOMAS P. PUCCIO


By:_____
        Thomas Puccio
230 Park Avenue, Suite 301
New York, New York 10169
(212) 883-6383
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December __, 2009

LAW OFFICE OF HENRY PUTZEL, III


By:_____
        Henry Putzel, III
        Lucia T. Chapman
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 661-0066
*Attorneys for Defendant Shaula Yemini*

Dated: New York, New York
    December __, 2009

LAW OFFICES OF SOLOMON N. KLEIN


By:_____
        Solomon N. Klein
1410 Broadway - Suite 1802
New York, NY 10018
(212) 575-0202
*Attorneys for Defendant William Sorin*

Dated: New York, New York
    December 17, 2009

MORRISON & FOERSTER LLP


By:_____
        Jack Auspitz
        Jamie Levitt
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000
*Attorneys for Defendant Dan Bodner*

39

361199.16

Dated: New York, New York
    December ⌐ 2009

MANATT PHELPS & PHILLIPS LLP

By: _____
    Amy Terry Sheehan
    Ronald G. Blum
7 Times Square
New York, New York 10036
(212) 790-4500
*Attorneys for Defendant Raz Alon*

Dated: New York, New York
    December __, 2009

THOMPSON HINE LLP

By: _____
    David Wilson
    Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Shawn Osborne*

Dated: New York, New York
    December __, 2009

WILMER CUTLER PICKERING HALE
    AND DORR LLP

By: _____
    Joanne Monteavaro
    William Paine
399 Park Avenue
New York, New York 10022
(212) 230-8800
*Attorneys for Defendant Francis Girard*

Dated: New York, New York
    December __, 2009

SIDLEY AUSTIN LLP

By: _____
    Steven M. Bierman
    Saima S. Ahmed
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
*Attorneys for Defendant Deloitte & Touche LLP*

Dated: New York, New York
    December __, 2009

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP

By: _____
    Daniel B. Goldman
    Asa R. Danes
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
(212) 318-6024
*Attorneys for Defendant Yechiam Yemini*

361199.16

Dated: New York, New York
      December __, 2009

MANATT PHELPS & PHILLIPS LLP


By:_____
      Amy Terry Sheehan
      Ronald G. Blum
7 Times Square
New York, New York 10036
(212) 790-4500
*Attorneys for Defendant Raz Alon*

Dated: New York, New York
      December __, 2009

THOMPSON HINE LLP


By:_____
      David Wilson
      Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Shawn Osborne*


Dated: New York, New York
      December __, 2009

WILMER CUTLER PICKERING HALE
    AND DORR LLP


By:_____
      Joanne Monteavaro
      William Paine
399 Park Avenue
New York, New York 10022
(212) 230-8800
*Attorneys for Defendant Francis Girard*

Dated: New York, New York
      December __, 2009

SIDLEY AUSTIN LLP


By:_____
      Steven M. Bierman
      Saima S. Ahmed
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
*Attorneys for Defendant Deloitte & Touche LLP*

Dated: New York, New York
      December __, 2009

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP


By:_____
      Daniel B. Goldman
      Asa R. Danes
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
(212) 318-6024
*Attorneys for Defendant Yechiam Yemini*

40

361199.16

Dated: New York, New York
          December __, 2009

MANATT PHELPS & PHILLIPS LLP


By:_____
          Amy Terry Sheehan
          Ronald G. Blum
7 Times Square
New York, New York 10036
(212) 790-4500
*Attorneys for Defendant Raz Alon*

Dated: New York, New York
          December __, 2009

THOMPSON HINE LLP


By:_____
          David Wilson
          Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Shawn Osborne*


Dated: New York, New York
          December __, 2009

WILMER CUTLER PICKERING HALE
    AND DORR LLP


By: Joanne Monteavaro
          Joanne Monteavaro
          William Paine
399 Park Avenue
New York, New York 10022
(212) 230-8800
*Attorneys for Defendant Francis Girard*

Dated: New York, New York
          December __, 2009

SIDLEY AUSTIN LLP


By:_____
          Steven M. Bierman
          Saima S. Ahmed
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
*Attorneys for Defendant Deloitte & Touche LLP*

Dated: New York, New York
          December __, 2009

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP


By:_____
          Daniel B. Goldman
          Asa R. Danes
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
(212) 318-6024
*Attorneys for Defendant Yechiam Yemini*

40

361199.16

Dated: New York, New York
     December ___, 2009

MANATT PHELPS & PHILLIPS LLP

By:_____
     Amy Terry Sheehan
     Ronald G. Blum
7 Times Square
New York, New York 10036
(212) 790-4500
*Attorneys for Defendant Raz Alon*

Dated: New York, New York
     December ___, 2009

THOMPSON HINE LLP

By: _____
     David Wilson
     Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Shawn Osborne*

Dated: New York, New York
     December ___, 2009

WILMER CUTLER PICKERING HALE
     AND DORR LLP

By:_____
     Joanne Monteavaro
     William Paine
399 Park Avenue
New York, New York 10022
(212) 230-8800
*Attorneys for Defendant Francis Girard*

Dated: New York, New York
     December 17, 2009

SIDLEY AUSTIN LLP

By: _____
     Steven M. Bierman
     Saima S. Ahmed
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
*Attorneys for Defendant Deloitte & Touche LLP*

Dated: New York, New York
     December ___, 2009

PAUL, HASTINGS, JANOFSKY &
     WALKER LLP

By:_____
     Daniel B. Goldman
     Asa R. Danes
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
(212) 318-6024
*Attorneys for Defendant Yechiam Yemini*

40

361199.16

Dated: New York, New York
December __, 2009

MANATT PHELPS & PHILLIPS LLP


By:_____
     Amy Terry Sheehan
     Ronald G. Blum
7 Times Square
New York, New York 10036
(212) 790-4500
*Attorneys for Defendant Raz Alon*

Dated: New York, New York
December __, 2009

THOMPSON HINE LLP


By:_____
     David Wilson
     Rebecca Brazzano
335 Madison Avenue, 12th Floor
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Shawn Osborne*


Dated: New York, New York
December __, 2009

WILMER CUTLER PICKERING HALE
     AND DORR LLP


By:_____
     Joanne Monteavaro
     William Paine
399 Park Avenue
New York, New York 10022
(212) 230-8800
*Attorneys for Defendant Francis Girard*

Dated: New York, New York
December __, 2009

SIDLEY AUSTIN LLP


By:_____
     Steven M. Bierman
     Saima S. Ahmed
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
*Attorneys for Defendant Deloitte & Touche LLP*

Dated: New York, New York
December 17, 2009

PAUL, HASTINGS, JANOFSKY &
     WALKER LLP


By:_____
     Daniel B. Goldman
     Asa R. Danes
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
(212) 318-6024
*Attorneys for Defendant Yechiam Yemini*

40

361199.16